IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JACQUELYN D. WEBB,

     Plaintiff,

vs.                          No. 2:16-cv-2033-JPM-dkv

SHELBY COUNTY SCHOOLS,

     Defendant.

---

REPORT AND RECOMMENDATION ON THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

---

On January 13, 2016, the plaintiff, Jacquelyn D. Webb ("Webb"), filed a *pro se* employment discrimination complaint against the defendant, Shelby County Schools ("SCS"), alleging that she was subjected to retaliation, harassment, and a hostile work environment because of her sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). (Compl., ECF No. 1.) Concurrently, Webb filed a motion for leave to proceed *in forma pauperis*, (ECF No. 2), which the court granted on January 14, 2016, (Order, ECF No. 5). The court entered an order to issue service of process for SCS that same day. (Order, ECF No. 6.) The case has been referred to the United States Magistrate Judge

for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Now before the court is SCS's December 16, 2016 motion for summary judgment. (Mot. for Summ. J., ECF No. 25.) Webb filed a response on January 19, 2017. (Resp., ECF No. 26.) For the reasons that follow, the court recommends that SCS's motion for summary judgment be granted in its entirety.

## I.    PROPOSED FINDINGS OF FACT

According to Rule 56.1 of the Local Rules for the United States District Court for the Western District of Tennessee:

Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:

(1)  agreeing that the fact is undisputed;

(2)  agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or

(3)  demonstrating that the fact is disputed.

L.R. 56.1(b).   A response is due within 28 days after service of the motion for summary judgment.  L.R. 56.1(b).  SCS filed its motion to dismiss on Friday, December 16, 2016.  Webb filed her response on Thursday, January 19, 2017.[1]

---

[1]Webb's response was untimely.  Because service of the motion was made by mail, an additional three days are added to the twenty eight-day period.  Therefore, Webb's response had to be filed on Monday, January 16, 2017.  However, because that day

The court finds that the following facts are undisputed for the purposes of this motion for summary judgment:

Webb was hired by SCS in 2007 as a teacher. (Def.'s Statement of Undisputed Facts ¶ 1, ECF No. 25-13; Pl.'s Statement of Facts ¶ 1, ECF No. 26.) She is a female and she was born in 1959. (Def.'s Statement of Undisputed Facts ¶ 2, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 1—2, ECF No. 26.) At the start of the 2011-2012 school year, Webb was assigned to Memphis Health Careers Academy. (Def.'s Statement of Undisputed Facts ¶ 3, ECF No. 25-13; Pl.'s Statement of Facts ¶ 3, ECF No. 26.) That year, an investigation was conducted regarding allegations that Webb had stated certain students were gay. (Def.'s Statement of Undisputed Facts ¶ 4, ECF No. 25-13; Pl.'s Statement of Facts ¶ 4, ECF No. 26.) Webb received a letter of reprimand on November 15, 2011. (Def.'s Statement of Undisputed Facts ¶ 5, ECF No. 25-13; Pl.'s Statement of Facts ¶ 5, ECF No. 26.) Thereafter, Webb's school assignment changed from Memphis Health Careers Academy to Kingsbury High School. (Def.'s Statement of Undisputed Facts ¶ 6, ECF No. 25-13; Pl.'s Statement of Facts ¶ 6, ECF No. 26.) On February 23, 2012, the

was Dr. Martin Luther King, Jr. Day, a federal holiday, Webb had an extra day to file. Thus, her response should have been filed by Tuesday, January 17, 2017. The Clerk's office did not receive Webb's response until Thursday, January 19, 2017, making it untimely. The Court will nevertheless consider Webb's response. Webb is warned that the Court will not consider any future late responses.

principal of Kingsbury High School issued a letter noting Webb had been absent 14 days. (Def.'s Statement of Undisputed Facts ¶ 8, ECF No. 25-13; Pl.'s Statement of Facts ¶ 6, ECF No. 26.)

An evaluator brought performance issues to Webb's attention in February 2014. (Def.'s Statement of Undisputed Facts ¶ 9, ECF No. 25-13; Pl.'s Statement of Facts ¶ 9, ECF No. 26.) On April 14, 2014, Webb was issued a written reprimand regarding her tardiness. (Def.'s Statement of Undisputed Facts ¶ 11, ECF No. 25-13; Pl.'s Statement of Facts ¶ 11, ECF No. 26.)

On April 30, 2014, Webb authored a student disciplinary referral for public display of affection. (Def.'s Statement of Undisputed Facts ¶ 13, ECF No. 25-13; Pl.'s Statement of Facts ¶ 13, ECF No. 26.) Webb then telephoned the parents of the involved students. (Def.'s Statement of Undisputed Facts ¶ 13, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 13-14, ECF No. 26.) SCS conducted an investigation following the parents' complaints regarding the nature of Webb's phone call. (Def.'s Statement of Undisputed Facts ¶ 14, ECF No. 25-13; Pl.'s Statement of Facts ¶ 14, ECF No. 26.) SCS issued a disciplinary notice to Webb on May 6, 2014, detailing performance issues. (Def.'s Statement of Undisputed Facts ¶ 15, ECF No. 25-13; Pl.'s Statement of Facts ¶ 15, ECF No. 26.) On May 14, 2014, SCS Labor Relations Department held a conference regarding Webb's actions and it sent her a detailing the issues raised at the conference. (Def.'s

Statement of Undisputed Facts ¶ 16, ECF No. 25-13; Pl.'s Statement of Facts ¶ 16, ECF No. 26.) Webb then contacted SCS Office of the Chief of Staff to complain about having been referred to Labor Relations. (Def.'s Statement of Undisputed Facts ¶ 17, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 16-18, ECF No. 26.) In a letter dated June 13, 2014 Webb appealed the contents of the letter dated May 14, 2014. (Def.'s Statement of Undisputed Facts ¶ 18, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 16-18, ECF No. 26.) SCS sent Webb a revised letter on June 25, 2014 regarding the same underlying issues and advising her that she was to be suspended for one day when school resumed for the 2014-2015 school year. (Def.'s Statement of Undisputed Facts ¶ 19, ECF No. 25-13; Pl.'s Statement of Facts ¶ 19, ECF No. 26.)

Webb posted details of her interactions with SCS staff on Facebook and she provided a radio talk show host with the names of staff members at Kingsbury High School as well as staff from SCS labor relations. (Def.'s Statement of Undisputed Facts ¶ 20, ECF No. 25-13; Pl.'s Statement of Facts ¶ 20, ECF No. 26.) Webb's fellow teachers, James Ritter and Adrian Glen-Tutton, then complained about Webb's conduct. (Def.'s Statement of Undisputed Facts ¶ 21, ECF No. 25-13; Pl.'s Statement of Facts ¶ 21, ECF No. 26.)

Webb submitted a Whistleblower Complaint Form dated September 3, 2014. (Def.'s Statement of Undisputed Facts ¶ 22, ECF No. 25-13; Pl.'s Statement of Facts ¶ 22, ECF No. 26.) On September 8, 2014, Webb met with Labor Relations Director Chantay Branch ("Branch") after Webb threatened her coworkers. (Def.'s Statement of Undisputed Facts ¶ 23, ECF No. 25-13; Pl.'s Statement of Facts ¶ 23, ECF No. 26.) Following the meeting on September 8, 2014, SCS sent a letter to Webb informing her that she was being placed on suspension without pay effective September 9, 2014. (Def.'s Statement of Undisputed Facts ¶ 24, ECF No. 25-13; Pl.'s Statement of Facts ¶ 24, ECF No. 26.) SCS recommended Webb for dismissal. (*Id.*) On October 1, 2014, SCS sent a letter to Webb informing her that the Shelby County Board of Education approved SCS's recommendation for her dismissal. (Def.'s Statement of Undisputed Facts ¶ 25, ECF No. 25-13; Pl.'s Statement of Facts ¶ 25, ECF No. 26.) The list of charges included: conduct unbecoming to a member of the teaching profession; purchase and consumption of alcohol while chaperoning students on an out of town field trip; demonstrated unprofessional conduct during a parent conference; threatened an employee after learning she provided a witness statement during an investigation; violation of SCBE Polices 4002, Staff Ethics; 4001, Harassment of employees; and, 4009, Safety Sensitive Employees: Drugs and Alcohol Policy. (*Id.*)

Webb testified that her principal, Carlos Fuller
("Fuller"), disrupted her work environment by coming into her
classroom and harassing her. (Def.'s Statement of Undisputed
Facts ¶ 27, ECF No. 25-13; Pl.'s Statement of Facts ¶ 27, ECF
No. 26.) Webb filed an EEOC Charge of Discrimination on
September 10, 2014 alleging retaliation and discrimination based
on sex and age. (Def.'s Statement of Undisputed Facts ¶ 29, ECF
No. 25-13; Pl.'s Statement of Facts ¶ 29, ECF No. 26.) Webb
executed retirement paperwork the same month. (Def.'s Statement
of Undisputed Facts ¶ 30, ECF No. 25-13; Pl.'s Statement of
Facts ¶ 30, ECF No. 26.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); *see also Graves v. Dayton Gastroenterology, Inc.*, 657 F.
App'x 485, 487 (6th Cir. 2016). The moving party has the burden
of showing that there is no genuine dispute of material fact in
the case. Fed. R. Civ. P. 56(a); *see also Stiles ex rel. D.S.
v. Grainger Cnty., Tenn.,* 819 F.3d 834, 847 (6th Cir. 2016).
This may be accomplished by pointing out to the court that the
non-moving party lacks evidence to support an essential element

of its case.  *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Facts are material if they "'might affect the outcome of the suit under the governing law.'"  *Stiles*, 819 F.3d at 847 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.*(quoting *Anderson*, 477 U.S. at 248).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also Ondo*, 795 F.3d at 603(citing *Moore*).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48; *see also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)(quoting *Anderson*, 477 U.S. at 247-48); *Mohney v. USA Hockey, Inc.*, 5 F. App'x 450, 454-55 (6th Cir. 2001)("However, to defeat a motion for summary judgment, '[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which

the jury could reasonably find for the [nonmovant].'"(quoting *Anderson*, 477 U.S. at 252)). "When the nonmovant does not effectively address the movant's assertion of a fact, the district court may 'consider the fact undisputed for purposes of the motion.'" *Ondo*, 795 F.3d at 603 (quoting Fed. R. Civ. P. 56(e)(2)).

In deciding a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson*, 477 U.S. at 251-52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Id.* (citations omitted). Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 806 (6th Cir. 2015); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *Anderson*, 477 U.S. at 255.

B.    Webb's Title VII Sex Discrimination Claim

Webb alleged sex discrimination in her complaint, (Compl., ECF No. 1), and she checked the box for sex discrimination in her EEOC charge, (EEOC Charge, ECF No.25-3).[2] She stated in her

---

[2]In determining the motion for summary judgment, the court considers facts alleged by Webb in her complaint and in her EEOC

EEOC charge that she was "subjected to undue harassment by Carlos Fuller, Principal in that he continually bullied and threatened me" and that she was "discharged on September 8, 2014 for exposing [Fuller's] sexual relationship with [a] teacher." (*Id.*) SCS contends that it is entitled to summary judgment on Webb's sex discriminations claim because Webb cannot establish a *prima facie* case of discrimination under Title VII. (Mem. in Supp. of Mot. for Summ. J. 3-7, ECF No. 25-1.)

Title VII makes "it an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of sex discrimination, Webb must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Peltier v.*

Charge. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502-03 (6th Cir. 2001) (reversing a Rule 12(b)(6) dismissal of a discrimination claim where the district court failed to consider the facts alleged in the plaintiff's discrimination charge, which was attached to his complaint); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("[B]ecause aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charges.").

*United States*, 388 F.3d 984, 987 (6th Cir. 2004).

In the instant case, the first prong is easily met: Webb is a female and thus is a member of a protected group. In reference to the second prong, Webb asserts that she suffered adverse employment action when she was suspended without pay after she revealed that Fuller was having a sexual relationship with the school's librarian and when she was terminated after she retired.[3] (Compl. 5, ECF No. 1; *see also* EEOC Charge, ECF No. 25-3.) Suspension without pay and termination are considered adverse employment actions. *See Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)(holding that adverse employment actions occur where the defendant "changed the terms or conditions of her employment in a way that was materially adverse to her," like through demotion or termination.)

Despite the fact that Webb has satisfied the first two prongs of sex discrimination, she has failed to allege that similarly situated non-protected employees were treated more favorably. She simply states that she was "discriminated against because of [her] sex," offering no facts to support this

---

[3]Webb took an early retirement. The actual date of her retirement is disputed, but it is agreed that it occurred in September 2014. (Def.'s Statement of Undisputed Facts ¶ 30, ECF No. 25-13; Pl.'s Statement of Facts ¶ 30, ECF No. 26.) Webb claims that the Shelby County School Board changed Webb's status from on September 30, 2014, despite the fact that Webb had already retired. (Def.'s Statement of Undisputed Facts ¶ 25, ECF No. 25-13; Pl.'s Statement of Facts ¶ 25, ECF No. 26.)

allegation. (EEOC Charge, ECF No. 25-3.) This is a "conclusory statement" that "do[es] not suffice" to defeat motion for summary judgment. *Iqbal*, 556 U.S. at 678(*citing Twombly*, 550 U.S. at 555). Accordingly, Webb has failed to make out a case for sex discrimination. The court therefore recommends that SCS be granted summary judgment on Webb's sex discrimination claim.

Webb has also failed to make out a case for sex-based hostile work environment. "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). Under Title VII, to establish a hostile work environment claim based on sexual harassment, Webb must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). In the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Court explained that a hostile environment is a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Id.* at 21 (citations and internal

quotation marks omitted). The conduct must be severe or pervasive enough, both subjectively and objectively, such that a reasonable person would find it hostile and the victim found it hostile. *Id.* at 21-22. Relevant factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance." *Id.* at 23.

In her complaint and EEOC charge, Webb asserts that Fuller "continually harassed and bullied her." (Compl., ECF No. 1; EEOC Charge, ECF No. 25-3.) However, she offers no examples of the alleged harassment and bullying in her complaint or EEOC charge. In her whistleblower complaint, Webb asserted that in December 2013, "after playing, Earth, Wind, & Fire on the intercom, Mr. Fuller commented, "Ms. Webb, Ms. Webb, sound [sic] like bedroom music." (Whistleblower Compl., ECF No. 25-12.) This is the only incident alleged of a possible sex-based comment. This single incident is insufficient to make a claim for sex-based hostile work environment, and it was not mentioned in Webb's EEOC charge or the complaint. *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000)(holding that "simple teasing, offhand comments, and isolated incidents . . . [do] not amount to discriminatory changes in the terms and conditions of a plaintiff's employment." (citation omitted)).

The court therefore recommends that to the extent Webb asserts a hostile environment based on sex, her claim should be dismissed.

C.  Webb's Age Discrimination Claim

In her EEOC charge and in her complaint,[4] Webb claims that SCS discriminated her due to her age, in violation of the ADEA. (ECF No. 1; EEOC Charge, ECF No. 25-3.)  In support of this claim, Webb alleges solely that Fuller "repeatedly stated that he was going to help [Webb] retire and [she] was one of the older employees." (EEOC Charge, ECF No. 25-3.)

The ADEA prohibits an employer from discriminating "against any individual with respect to his terms of compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In ADEA claims, the plaintiff bears the burden of persuasion to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

To establish a *prima facie* case of age discrimination under the ADEA absent direct evidence of discrimination, Webb must establish: (1) she was a member of the protected class, meaning she was at least 40 years old; (2) she was subjected to an

_____

[4]On the first page of her form complaint, Webb did not check the box indicating that she was suing SCS under the ADEA. (Compl. 1, ECF No. 1.)  However, later in her complaint, she alleges age discrimination. (*See id.* at 4.)

adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a substantially younger individual. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008)(citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007); *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 456 (6th Cir. 2007). If the plaintiff establishes a *prima facie* case then the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. *McDonnell Douglas,* 411 U.S. at 802. "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

Webb does not allege sufficient facts to establish *prima facie* case for age discrimination. Webb was over forty years of age at the time of the alleged discrimination, satisfying the first prong. In reference to the second prong, she asserts that she suffered adverse employment actions when she was suspended and later terminated after her retirement. (*See* Compl., ECF No. 1; EEOC Charge, ECF No. 25-3.) However, she does not assert that she was qualified for the position or that she was treated differently from any other employees, let alone younger workers. Webb only alleges that Fuller stated that he would help her retire. (EEOC Charge, ECF No. 25-3.) This, absent facts

indicating that she was actually discriminated against because of her age, is insufficient to state an age discrimination charge. Therefore, Webb's age discrimination claim should be dismissed.

Webb has also failed to make out a *prima facie* case for hostile work environment under the ADEA. In order to make a *prima facie* hostile work environment claim under the ADEA, Webb must show the following: 1) that she was 40 years or older at the time of the alleged harassment; 2) that she was subjected to harassment, either through words or actions, based on her age; 3) the harassment unreasonably interfered with Webb's work performance and it created an objectively intimidating, hostile, or offensive work environment; and 4) there is some basis for liability on the part of SCS. *See Crawford v. Medina Gen. Hosp.*, 93 F.3d 830, 834—35 (6th Cir. 1996)(citations omitted). The Supreme Court has held that, in order for the harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)(internal quotation marks and citation omitted). The "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Id.* (internal

quotation marks and citations omitted).

Webb has alleged that she was over the age of 40 when the alleged harassment took place, but she has failed to show that the alleged harassment "interfered with her work performance" or "created an objectively intimidating, hostile, or offensive work environment." *Crawford*, 93 F.3d at 834—35. Webb states that Fuller told her that he was going to help her retire. (EEOC Charge, ECF No. 25-3.) This alone is not "sufficiently severe or pervasive enough to alter the conditions of [Webb's] employment." *Meritor,* 477 U.S. at 67. Therefore, it is recommended that SCS be granted summary judgment on any hostile work environment claim under the ADEA that Webb purports to assert.

D.   <u>Webb's Retaliation Claim</u>

In her complaint, Webb alleges that she was retaliated against because she filed a whistleblower complaint and an EEOC charge. (Compl. 4-5, ECF No. 1.) To state a claim of retaliation under Title VII, Webb must allege that: (1) she acted in a manner protected by Title VII; (2) SCS knew of this exercise of protected activity; (3) SCS subsequently took an adverse action against Webb, or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the adverse action had a causal connection to the protected activity. *Lundy v. Gen. Motors Corp.*, 101 F. App'x 68, 73 (6th

17

Cir. 2004). There are two types of "protected activity" for purposes of a Title VII retaliation claim: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII, and (2) making a charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

"To demonstrate a causal connection between a materially adverse action . . . and the exercise of protected rights, a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008)(citation and internal quotation marks omitted).

Webb satisfies the first element because she alleges that she filed an EEOC charge against SCS and Fuller on September 10, 2014.[5] (EEOC Charge, ECF No. 25-3.) The filing of an EEOC

_____

[5]Webb also states that she was retaliated against for filing a whistleblower complaint. (Compl. 4-5, ECF No. 1.) However, in this case, Webb's filing of a whistleblower complaint is not protected activity. Tennessee law provides that "an employee's actions will not qualify him or her for protection merely because the employee has pointed out an illegal activity. It is the court's task to determine whether the whistleblowing activity that brought to light an illegal or unsafe practice has furthered an important public policy interest. To that end, it is essential that the employee's attempt to expose illegal or unsafe practices do more than merely advance the employee's private interest." *Young v. United Parcel Serv., Inc.*, 992 F.Supp. 2d 817, 839 (M.D. Tenn. 2014)(internal citations omitted). In her whistleblower complaint, Webb merely alleged

charge is protected activity. *Davis v. City of Memphis Fire Dep't.*, 940 F.Supp. 2d 786, 798 (W.D. Tenn. 2013)(holding that the filing of an EEOC charge is protected activity). SCS allegedly knew of this activity because Webb asserts that SCS sent records to the EEOC. (Compl. 4, ECF No. 1.)

In reference to the third prong, Webb argues that she was subjected to retaliation when she was terminated after she retired. (*Id.* at 5.) Webb submitted her retirement paperwork for the first time on August 16, 2014, (Webb's Dep. at 252, ECF No. 25-14), almost four weeks before she filed an EEOC charge on September 10, 2014, (EEOC Charge, ECF No. 25-3). She insists that she actually retired on September 10, 2014, but paperwork provided by SCS indicates that she submitted her request for early retirement in August. (*See* Webb's Dep. at 252, ECF No. 25-14.) On September 30, 2014, after she officially retired, SCS terminated Webb's employment. (*See id.* at 255.) Even assuming her allegations constitute adverse employment actions or "severe or pervasive retaliatory harassment by a supervisor," Webb has not plausibly pled that the change in work conditions

---

that Fuller was having an affair with the school librarian and that he made a "sexual remark" to her one day in December 2013. (*See* Whistleblower Compl., ECF No. 25-12.) While these actions may be inappropriate, they do not rise to the level of "illegal or unsafe practices" of which exposure furthers "important public policy interest[s]." *Young*, 992 F.Supp. 2d at 839. Therefore, Webb's filing of a whistleblower complaint is not considered protected activity.

had a causal connection to her protected activity. Therefore, SCS should be granted summary judgment on this claim.

Even if Webb could show a causal connection between exercising protected activity and the alleged retaliation, SCS has offered legitimate, non-discriminatory reasons for its actions. *See Hout v. City of Mansfield*, 550 F.Supp. 2d 701, 724—25 (N.D. Ohio 2008)(citing *McDonnell Douglass*, 411 U.S. at 802—03). Webb received numerous warnings before SCS recommended that she be dismissed. In 2011, Webb stated that certain students were gay and she received a letter of reprimand after the incident. (Def.'s Statement of Undisputed Facts ¶ 5, ECF No. 25-13; Pl.'s Statement of Facts ¶ 5, ECF No. 26.) In February 2012, she received another letter of reprimand after she was absent from her new position at Kingsbury High School for fourteen days.[6] (Def.'s Statement of Undisputed Facts ¶ 8, ECF No. 25-13; Letter of Reprimand Feb. 23, 2012, Ex. 5 to Webb's Dep., ECF No. 25-14.) In April 2014, she received a letter of reprimand because she was late to work 32 times from

---

[6]Webb insists that she was not assigned to a school at the time, so she was not actually absent for fourteen days. (Pl.'s Statement of Facts ¶ 11, ECF No. 26.) However, she was presented with an employee status change form on January 3, 2012, indicating that her assignment had been changed from Memphis Health Careers Academy to Kingsbury High School. (*See* Ex. 5 to Webb's Dep. at 212-15, ECF No. 25-14.) She refused to sign the status change form, but she knew of the change in assignment. (*Id.*)

January 8, 2014 to April 14, 2014.[7] (Def.'s Statement of Undisputed Facts ¶ 11, ECF No. 25-3; Letter of Reprimand April 14, 2014, Ex. 7 to Webb's Dep., ECF No. 25-14.) At that time, she was warned that her conduct fell "under TEM eligibility for non-reelect criteria." (*Id.*) She was investigated again in April 2014 for calling students' homes about the students' sexual orientation and public displays of affection at school. (Def.'s Statement of Undisputed Facts ¶¶ 13-14, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 13-14, ECF No. 26.) Webb was suspended for one day without pay after the Labor Relations Advisor for SCS determined that discipline was warranted. (Def.'s Statement of Undisputed Facts ¶ 14-16, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 14-16, ECF No. 26.) After several co-workers complained about being harassed and threatened by Webb, SCS's Labor Relations Director determined that she should be dismissed; she was immediately suspended without pay for one day. (Def.'s Statement of Undisputed Facts ¶¶ 21, 23-25, ECF No. 25-13; Pl.'s Statement of Facts ¶¶ 21, 23-25, ECF No. 26.) As basis for its decision to terminate Webb's employment, the Shelby County Board of Education found that Webb had engaged in

---

[7]Webb again asserts that she "can't be reprimanded [for tardiness] when she was not assigned to a school." (Pl.'s Statement of Facts ¶ 11, ECF No. 26.) SCS records indicate that she was in fact assigned to Kingsbury High School at the time. (*See* Ex. 7 to Webb's Dep. at 221, ECF No. 25-14.) Further, it appears as though Webb had been reporting to Kingsbury High School from January 2012 through April 2014.

conduct unbecoming to a member of the teaching profession; she purchased and consumed alcohol while chaperoning students on an out of town field trip; she demonstrated unprofessional conduct during a parent conference; she threatened an employee after learning that the employee provided a witness statement during an investigation; and she violated SCS ethics, harassment, safety, and drugs and alcohol policies. (*Id.*) Webb retired in September 2014 before she was officially dismissed. (Def.'s Statement of Undisputed Facts ¶ 30, ECF No. 25-13; Pl.'s Statement of Facts ¶ 30, ECF No. 26.) Thus, SCS had legitimate, non-retaliatory reasons for terminating Webb's employment. It is therefore recommended that SCS be granted summary judgment on Webb's retaliation claim.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that SCS's Motion for Summary Judgment be granted in its entirety.

Respectfully submitted this 31st day of January, 2017.

S/ Diane K. Vescovo_____<br>
Diane K. Vescovo<br>
United States Magistrate Judge